J-S24002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.J.M.W. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: V.J.M.F., MOTHER | : | |
| | : | |
| | : | No. 561 WDA 2021 |

Appeal from the Order Entered April 8, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2020-630-IVT

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:          **FILED: SEPTEMBER 27, 2021**

V.J.M.F. ("Mother") appeals from the Order entered on April 8, 2021, by the Court of Common Pleas of Cambria County, which involuntarily terminated her parental rights with respect to her Child, R.J.M.W. ("Child"), born in April 2016.[1]  Because the record supports the decision of the Orphan's Court, we affirm the Order.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the Orphans' Court's findings of fact contained in the Order on appeal, and from the certified

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Order also involuntarily terminated the parental rights of Child's father, B.S.W. ("Father").  Father appealed the termination of his rights at Superior Court docket number 547 WDA 2021.  We address his appeal in a separate memorandum.

record. In July 2016, when Child was three months old, Mother and Father were arrested for possession of illegal substances and endangering the welfare of Child. Blair County Children Youth and Families Agency ("Agency") obtained emergency protective custody and the Blair County juvenile court adjudicated Child dependent. The Agency placed Child in kinship care with Paternal Grandmother. In June 2017, Mother and Father moved into Paternal Grandmother's home and Child returned to their care because they had both met their family service plan goals, including participation in drug addiction therapies. Court supervision ended July 2017.

However, one month later, Paternal Grandmother called the local police department and asked for Child to be removed because Mother and Father had relapsed into drug use and she feared for Child's safety. Police officers found marijuana and drug paraphernalia, including needles and spoons with residue, in the home. Mother was arrested for probation violations; Father's whereabouts were unknown. The court again adjudicated Child dependent; the Agency placed Child with Maternal Grandmother in Cambria County.

Upon Mother's release from prison in November 2017, she, too, lived with Maternal Grandmother. However, Cambria County Children and Youth Services ("CYS") began a dependency case in October 2018, when Child was two-and-a-half years old, because of Mother's homelessness, ongoing substance abuse, neglectful parenting, and failure to address mental health

issues. The juvenile court adjudicated Child dependent in December 2018 and set Child's permanent placement goal as return to parent or guardian.

Following Child's adjudication of dependency, the court ordered Mother to complete a series of goals, which included obtaining a psychological evaluation and substance abuse assessment, complying with substance abuse treatment, submitting random substance abuse screens, avoiding the use of illegal substances, completing parenting classes, and maintaining a residence for at least six months. Over the next year and a half, Mother was minimally compliant with these goals as she struggled with her substance abuse and mental health issues. The court entered an Order in June 2020, in which it changed Child's permanent placement goal to adoption.

On August 24, 2020, CYS filed a Petition to terminate Mother's parental rights involuntarily. The Orphans' Court held a hearing on the Petition on March 15, 2021, when Child was nearly five years old[2] and Mother was incarcerated due to an incident in January 2021.[3]

CYS presented testimony from CYS caseworker, Chloe Barret; CYS casework supervisor, May Popovich; JusticeWorks family resource specialist, Brenda Hoover; psychologist, Dennis Kashurba; substance abuse counselor,

---

[2] The Orphans' Court appointed a single attorney, Suzann Lehmier, Esq., to represent Child's legal interests and best interests. Mother was also represented by counsel.

[3] Mother allegedly stole a car and assaulted a police officer.

Josh Lightner; and Bair Foundation visitation supervisor, Samantha Eisenhuth. Each testified as to Mother's inconsistency with respect to her taking care of her physical and mental health, as well as her relapses into drug use, which essentially prevented her from functioning unless she had significant assistance from her mother and community services.

Mother testified on her own behalf, acknowledging that she had been inconsistent in taking care of herself, had struggled with substance abuse problems for over twenty years, and was unable to care for Child due to her struggles and the likelihood of receiving a prison sentence of at least two years' incarceration at her sentencing in April 2021. She told the court she loved her daughter and wanted what was best for her.

On April 8, 2021, the Orphans' Court entered an Order involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). Thereafter, Mother filed timely a Notice of Appeal and Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

**ISSUES ON APPEAL**

Mother raises the following issues for our review:

> 1. Whether the [orphans'] court erred in concluding that [CYS] had met its burden of proof by clear and convincing evidence[?]
>
> 2. Whether the [orphans'] court erred and/or abused its discretion in making the determination to terminate the mother's rights to her child, [Child?]

Mother's Brief at 4 (Orphans' Court answers omitted).[4]

**LEGAL ANALYSIS**

When reviewing a decree involuntarily terminating parental rights, this Court must accept the findings of fact and credibility determinations of the Orphans' Court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the Orphans' Court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the Orphans' Court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

"The [orphans'] court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). This Court defers to the Orphans' Court, as it often has "first-hand observations of the parties spanning multiple hearings." *In re*

---

[4] We note that Mother develops her claims poorly and presents the bulk of her argument in the "Summary of Argument" section of her brief. Nonetheless, because we can discern the substance of Mother's claims, and the defects in her brief do not impede meaningful appellate review, we address her appeal on the merits. *See* Pa.R.A.P. 2101 ("[I]f the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 584 (Pa. Super. 2014) ("When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

*T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the Orphans' Court to conduct a bifurcated analysis. **See** 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), the court will then analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, pursuant to Section 2511(b). The courts must examine the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. **In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007). As this Court has emphasized, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe

environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude the Orphans' Court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); ***In re Adoption of S.P.***, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal and incapacity to perform parental duties. ***In re S.C.***, 247 A.3d 1097, 1104 (Pa. Super. 2021), *reargument denied* (Mar. 10, 2021) (quoting ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015)). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***Matter of Adoption of M.A.B.***, 166 A.3d 434, 443 (Pa. Super. 2017) (quoting ***In re N.A.M.***, 33 A.3d 95, 100 (Pa. Super. 2011)).

At a termination hearing, the Orphans' Court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings. *In re S.C.*, *supra* at 1105 (quoting *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010), *reargument denied* (May 28, 2010)).

In this case, Mother argues that CYS presented insufficient evidence to support termination of her parental rights. Mother's Brief at 6. Mother admits that her compliance with CYS was minimal during the first half of 2020. *Id.* at 7. She asserts, however, that her compliance improved during the second half of the year in that she took her prescribed medications, obtained a job, and had stable housing. *Id.* Mother concedes she suffered a "setback" when she was incarcerated in January 2021. *Id.* Nonetheless, she proposes CYS should have given her more credit for her compliance preceding her incarceration and placed Child with a grandparent rather than seeking to terminate her parental rights. *Id.* at 7, 12.

In its findings of fact included in the Order on appeal, the Orphans' Court determined Mother had failed since Child's placement in December 2018 to comply with her permanency plan requirements. Order, 4/8/21, at 3-9. The court found that Mother lacked a stable residence, had a continued history of substance abuse, and failed to follow through with mental health treatment. *Id.* at 8-9. While Mother received services through the JustCare program, the

program discharged her unsuccessfully for being verbally aggressive to staff. *Id.* at 7-8.  In addition, the court observed Mother was incarcerated several times during Child's life, including at the time of the termination hearing.  *Id.* at 2-4.

Contrary to Mother's suggestion that she was on the verge of remedying these issues prior to her most recent incarceration, the Orphans' Court relied on the opinion of psychologist, Dennis Kashurba, who evaluated Mother in August 2019.  *Id.* at 5.  Mr. Kashurba opined Mother would need intensive services and treatment for an extensive period before she would be able to perform parental duties beyond merely participating in supervised visits.  *Id.* at 6.  The court noted Mr. Kashurba's observation that Mother presented as "not capable of independently managing her own life, much less accepting parenting responsibilities for her child."  *Id.* at 5.

Further, the Orphans' Court credited the "Best Interest Statement" prepared by CYS's casework supervisor, May Popovich, and caseworker, Chloe Barrett, which the court admitted into evidence as Petitioner's Exhibit 10.  *Id.* at 10-11.  The Statement indicated Mother had been unable to achieve permanency for herself and "has shown an inability to acquire the skills to provide a stable and safe environment for [Child.]"  *Id.* at 11 (quoting Petitioner's Exhibit 10).  Regarding Mother's contention that it should have delayed terminating her parental rights, the court explained that it had "considered how long must this child wait for her parents to actively perform

like parents. She is now five years old with no progress on their part, only talk." *Id.*

Having reviewed the record, we conclude it supports the findings of the Orphans' Court that Mother has not provided Child with essential parental care, control, and subsistence necessary for her mental and physical wellbeing, and that Mother is unable to remedy the causes of her parental incapacity, neglect, or refusal any time in the foreseeable future. Thus, Mother is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We further conclude, pursuant to Section 2511(b), that the Orphans' Court properly determined termination of Mother's parental rights would be in the best interest of Child. With respect to Section 2511(b), the court must consider whether termination of parental rights would best serve the child's developmental, physical, and emotional needs and welfare. *See* 23 Pa.C.S. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, *supra* at 1121.

It is sufficient for the Orphans' Court to rely on the opinions of social workers and caseworkers when evaluating the impact termination of parental rights will have on a child. *Id.* The court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re*

***N.A.M.***, ***supra*** at 103. Ultimately, the concern is the needs and welfare of a child. ***In re Z.P.***, ***supra*** at 1121.

Mother argues that it was improper for the Orphans' Court to terminate her parental rights because she shares a bond with Child. Mother's Brief at 11. Specifically, she challenges testimony that her failure to discipline Child during visits indicates that she and Child share a sister-like bond rather than a parental bond. ***Id.*** While Mother acknowledges she failed to discipline Child, she maintains that "disciplining a child while under a spotlight of the visits is a task few parents who have had their children placed can accomplish." ***Id.***

The Orphans' Court found that Mother and Child shared a bond, but it credited the testimony that Mother provided no discipline for Child during their visits, and that this bond was "more like a sister bond" than a parental bond. Order, 4/8/21, at 10. It was within the court's discretion to accept this testimony, and we must defer to its determination. ***In re M.G.***, ***supra*** at 73–74; ***T.S.M.***, ***supra*** at 267. The court further found that Child shared a bond with her foster parents and was doing well in their care. Order, 4/8/21, at 10. The court concluded, therefore, that severing Child's bond with Mother would not have an adverse effect on her. ***Id.***

Our review of the record supports the Orphans' Court's findings. We do not discern an error of law or abuse of discretion with respect to the court's conclusion. Thus, we affirm the court's determination that the involuntary termination of Mother's parental rights is in the best interests of Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021